896 A.2d 1143 (2006)
385 N.J. Super. 240
LIBERTY MUTUAL INSURANCE COMPANY, Plaintiff-Appellant,
v.
Christopher THOMSON[1] and Hertz Rental Corporation, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued December 21, 2005.
Decided May 3, 2006.
*1144 Robert P. Clark, Trenton, argued the cause for appellant (Clark & DiStefano, attorneys; Mr. Clark, on the brief).
JoAnn Katzban, Montclair, argued the cause for respondents (Garrity, Graham, Favetta & Flinn, attorneys; Ms. Katzban, on the brief).
Before Judges WECKER, FUENTES and GRAVES.
The opinion of the court was delivered by
WECKER, J.A.D.
Plaintiff, Liberty Mutual Insurance Company, appeals a summary judgment (1) dismissing its claim against defendants Hertz Rental Corporation and Christopher Thomson for reimbursement of Personal Injury Protection (PIP) benefits paid to Liberty's insured and (2) denying its cross-motion to compel arbitration of that claim under N.J.S.A. 39:6A-9.l. We affirm.
Liberty's insured, Alexsandr Rebe, was injured when his car was struck by a Hertz rental vehicle operated by co-defendant Christopher Thomson, a resident of Australia. Liberty paid PIP benefits totaling $7,487.55 on Rebe's behalf, as required by the terms of the automobile insurance policy issued to Rebe, and later demanded reimbursement from Hertz.
The Hertz vehicle was registered in New York and rented to Thomson in North Carolina, under a rental agreement that provided for the vehicle to be returned in New York State. The rental agreement contained this provision:
THIS PROTECTION WILL CONFORM TO THE BASIC REQUIREMENTS OF ANY APPLICABLE MANDATORY "NO FAULT" LAW BUT DOES NOT INCLUDE "UNINSURED MOTORIST," "UNDERINSURED MOTORIST," "SUPPLEMENTARY NO FAULT" OR ANY OTHER OPTIONAL COVERAGE. TO THE EXTENT PERMITTED BY LAW, HERTZ AND YOU HEREBY WAIVE AND REJECT THE INCLUSION OF SUCH PROTECTION. If such protection is imposed by operation of law, then the limits of such protection will be the minimum required for primary liability protection by the law of the jurisdiction in which the accident occurs. Hertz warrants that the protection described in this subparagraph is primary with respect to any insurance coverage which You or an Authorized Operator may have.
Hertz thereby acknowledged its obligation to provide the mandatory coverage "imposed by operation of law" in any jurisdiction where an accident might occur.
*1145 N.J.S.A. 39:6B-1(a) requires that "[e]very owner or registered owner of a motor vehicle registered or principally garaged in [New Jersey] shall maintain motor vehicle liability insurance...." (Emphasis added). See Agency Rent-A-Car, Inc. v. Indem. Ins. Co. of N. Am., 268 N.J.Super. 319, 322-23, 633 A.2d 975 (App.Div.1993). N.J.S.A. 39:6A-4 mandates that "every standard automobile liability policy ... shall contain personal injury protection benefits for the payment of benefits without regard to ... fault of any kind, ... to the named insured ... who sustain[s] bodily injury as a result of an accident while occupying, entering into, alighting from or using an automobile...."
Hertz was self-insured with respect to the Thomson rental car. A motor vehicle rental company is permitted to self-insure "if it can reasonably satisfy the commissioner of banking and insurance as to the permanence and financial standing of its business." N.J.S.A. 45:21-8; Agency Rent-A-Car, supra, 268 N.J.Super. at 322, 633 A.2d 975. Under N.J.S.A. 39:6-52(a), "[a]ny person in whose name more than 25 motor vehicles are leased may qualify as a self-insurer by obtaining a certificate of self-insurance issued by the Commissioner of Insurance as provided in subsection (b) of this section."
Under the No-Fault Law, N.J.S.A. 39:6A-1 to -34, our courts have consistently held that "a self-insurer's coverage obligations are co-extensive with the obligations of those possessing liability policies." Ryder/P.I.E. Nationwide, Inc. v. Harbor Bay Corp., 119 N.J. 402, 410, 575 A.2d 416 (1990).
[W]ith respect to the scope of coverage obligations, it is the well-settled policy of this state to consider a self-insurance certificate as the equivalent of a policy of insurance. We find no reason to make a distinction between the two forms of insurance coverageself-insurance and a liability policybased on N.J.S.A. 39:6B-1, with respect to the extent of statutorily-required coverage.
[Ryder, supra, 119 N.J. at 413, 575 A.2d 416 (internal citation omitted)].
See also White v. Howard, 240 N.J.Super. 427, 431, 573 A.2d 513 (App.Div.) (inrelation to liability coverage, determining that a certificate of self-insurance is the "functional equivalent of ... a separate insurance policy covering itself"), certif. denied, 122 N.J. 339, 585 A.2d 354 (1990).[2]
In Ryder, the Court noted that self-insureds have been held obligated to provide uninsured motorist coverage. 119 N.J. at 410-11, 575 A.2d 416; see also Transp. of N.J. v. Watler, 161 N.J.Super. 453, 463-64, 391 A.2d 1240 (App.Div.1978) (with respect to uninsured motorist coverage, holding that "[s]elf-insurers such as Transport should be expected to cover at least the same risks that other motorists are required by law to cover"), aff'd as modified, 79 N.J. 400, 400 A.2d 61 (1979). Thus every car rental company is required to provide the mandatory coverage set forth in our No-Fault Law while its cars are on New Jersey highways, regardless of whether it purchases a contract of insurance or chooses to self-insure.
The deemer statute, N.J.S.A. 17:28-1.4, provides in relevant part:
Any insurer authorized to transact or transacting automobile or motor vehicle insurance business in this State, or controlling or controlled by, or under *1146 common control by, or with, an insurer authorized to transact or transacting insurance business in this State, which sells a policy providing automobile or motor vehicle liability insurance coverage, or any similar coverage, in any other state, ... shall include in each policy coverage to satisfy at least the personal injury protection benefits coverage pursuant to [N.J.S.A. 39:6A-4]... whenever the automobile or motor vehicle insured under the policy is used or operated in this State.

[Emphasis added.]
Thus, N.J.S.A. 17:28-1.4 provides that any "insurer" who issues a policy on an out-of-state vehicle, and who does business in New Jersey, shall be deemed to have contracted to provide the minimum statutorily-required coverage (including PIP) for any of its insured vehicles while on a New Jersey highway. Mandatory coverage under the deemer statute includes PIP. Martin v. Home Ins. Co., 141 N.J. 279, 282, 661 A.2d 808 (1995).
The underlying purpose of the deemer statute has been described as "to lower insurance premiums, reduce litigation and make PIP benefits available to all." Gov't Employees Ins. Co. v. Allstate Ins. Co., 358 N.J.Super. 555, 561, 818 A.2d 474 (App. Div.2003). In that case, we excluded from the impact of the deemer statute a carrier that was not authorized to transact business in New Jersey. Id. at 563, 818 A.2d 474. Writing for this court in Gov't Employees, Judge Lefelt explained that in passing the deemer statute, the Legislature "sought to ensure that New Jersey-authorized insurance companies provide to their out-of-state insureds traveling in New Jersey the same protections required of in-state insured vehicles." Ibid. (citing Martin, supra, 141 N.J. at 282, 661 A.2d 808). In Martin, the Court noted the purpose of New Jersey's no-fault law"swift reparations and reduction of court congestion"and described the Legislature's adoption of N.J.S.A. 17:28-1.4 to "require[] that any policy issued by an insurance company qualified to do business in New Jersey covering a vehicle while it is being operated in New Jersey be construed as providing the same type of PIP benefits as are required under New Jersey law." 141 N.J. at 282, 661 A.2d 808.
In sum, Hertz self-insured the rental vehicle driven by Thomson, as it was permitted to do. If an insurance carrier doing business in New Jersey issues a motor vehicle policy covering a car registered in New York, the carrier is deemed to have agreed to provide the minimum required coverage under New Jersey law, including PIP. N.J.S.A. 17:28-1.4. As a self-insured, considered to have issued an insurance policy to itself, see White v. Howard, supra, 240 N.J.Super. at 431, 573 A.2d 513, Hertz is subject to mandatory insurance coverage for its rental vehicles while driven in New Jersey, just as if it was an insurance carrier. See Robinson v. Coia, 183 N.J. 25, 869 A.2d 878 (2005), rev'g on dissent, 369 N.J.Super. 336, 848 A.2d 888 (App.Div.2004) (Wecker, J., dissenting) (addressing a self-insured car rental company's mandatory liability coverage). As a self-insured, Hertz unquestionably was obligated to provide PIP coverage (as well as liability and uninsured motorist coverage) to renters while driving in New Jersey, no matter where the rental car was registered.
We now address the specific question before us, Liberty's right to reimbursement of PIP benefits it paid on behalf of Rebe. N.J.S.A. 39:6A-9.1 provides, in relevant part:
An insurer ... paying [PIP] benefits... as a result of an accident occurring within this State, shall, within two years of the filing of the claim, have the right *1147 to recover the amount of payments from any tortfeasor who was not, at the time of the accident, required to maintain personal injury protection ... coverage... under the laws of this State, including personal injury protection coverage required to be provided in accordance with ... [N.J.S.A. 17:28-1.4 (the deemer statute)], or although required did not maintain personal injury protection... coverage at the time of the accident.
[Emphasis added.]
N.J.S.A. 39:6A-9.1 "allows PIP carriers to recover not from other PIP carriers but from non-PIP carriers and uninsureds." Unsatisfied Claim & Judgment Fund Bd. v. N.J. Mfrs. Ins. Co., 138 N.J. 185, 191, 649 A.2d 1243 (1994). "[T]he Legislature found unnecessary any provision for reimbursement rights as between PIP carriers." Id. at 201, 649 A.2d 1243.
On its face, the statute permits reimbursement of PIP benefits to an insurer only where the tortfeasor (or its carrier) either was not required to carry PIP coverage, or, although required, failed to do so. "The first class refers to insured commercial or public vehicles without PIP coverage.... The second class refers to uninsured tortfeasors." Id. at 193, 649 A.2d 1243. "[W]hen read as a whole, the statute provides only two classes from which [reimbursement] may be realized: uninsureds, and insureds not required to carry PIP coverage." Id. at 194-95, 649 A.2d 1243. Liberty argues that Hertz, as a self-insured owner of this New York-registered vehicle, is not subject to the same statutory requirement as an insurance company to provide PIP coverage for its rental cars. We disagree.
In support of its motion for summary judgment, Hertz submitted a certification by a claims examiner employed by Hertz Claim Management, Bob Frankel, who certified as follows:
In my capacity as a claims examiner I handle among other things claims involving the Hertz Corporation and the drivers of Hertz rental vehicles.
I know that Hertz Corporation is self-insured and is required [by] law to pay personal injury protection benefits to the occupants of Hertz Motor Vehicles who are involved in accidents pursuant to the New Jersey Statutory Personal Injury Protection Insurance Requirements and that Hertz makes such payments if its vehicle is involved in an accident in the State of New Jersey no matter what state the vehicle is registered in.
Liberty submitted no contrary assertion in opposition to summary judgment. It is plain that Hertz was required to and did provide PIP coverage on this rental car, and therefore does not fall within either of the two classes from which PIP reimbursement may be realized.
Under the circumstances of the Hertz rental and its self-insured status, Hertz was in the same position as any PIP carrier and is not liable for reimbursement of PIP benefits paid by another carrier. Liberty has no right of reimbursement against Hertz, and its motion to compel arbitration was properly denied as moot.
Affirmed.
NOTES
[1] Co-defendant Thomson's surname was incorrectly spelled "Thompson" in plaintiff's complaint.
[2] The Criminal Code, addressing insurance fraud, defines "insurance company" to include a "self-insurer" and provides that the term "`[i]nsurance policy' means [in addition to the typical contract] any other alternative to insurance authorized or permitted by the State of New Jersey." N.J.S.A. 2C:21-4.5.